WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-07-00961-001-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Jack Samuel McNutt, | |
| Defendant. | |

Pending before the Court are Defendant Jack Samuel McNutt's ("McNutt") motion for final disposition and adjudication (Doc. 38) and motion to expedite hearing (Doc. 40). For the following reasons, both motions are denied.

**BACKGROUND**

On August 28, 2007, McNutt was indicted in this District on four counts related to bank robbery. (Doc. 6.) The indictment alleged that, in early August 2007, McNutt stole about $4,400 from two banks and attempted to steal from a third bank while making a bomb threat. (*Id.*)

On June 26, 2008, McNutt was convicted via guilty plea of a single count of attempted bank robbery and sentenced to 77 months' imprisonment. (Doc. 31 at 1.) The judgment specified that, upon his release from imprisonment, McNutt would be placed on supervised release for 3 years. (*Id.*) Among the standard conditions of supervision were that McNutt "not commit another federal, state, or local crime," "not purchase, possess, use, distribute or administer any narcotic or controlled substance . . . without a

prescription," and "pay any monetary penalties as ordered by the Court." (*Id.* at 2-3.) The judgment also included several special conditions of supervision, including that McNutt "abstain from all use of alcohol or alcoholic beverages." (*Id.* at 3.)

On March 8, 2013, McNutt's term of supervised release began. (Doc. 34 at 1.)

On March 7, 2014, while still on supervised release, McNutt provided a urine sample that tested positive for methamphetamine. (Doc. 34 at 2.) That same month, McNutt failed to make a required restitution payment. (*Id.*)

On April 12, 2014, McNutt was arrested for driving under the influence of alcohol. (*Id.* at 1.)

On April 21, 2014, the U.S. Probation Office filed a petition for an arrest warrant, alleging that McNutt had violated his terms of supervised release by committing the DUI offense, using alcohol and methamphetamine, and failing to make a restitution payment. (*Id.*) After the warrant issued (Docs. 34, 35), the United States Marshal's Service lodged a detainer on McNutt, which remains in effect today. (Doc. 42 at 2.)

Following his April 2014 arrest for DUI, McNutt pleaded guilty to related state-court charges and was sentenced to a 10-year term of imprisonment in the Arizona Department of Corrections. (Doc. 39 ¶ 3; Doc. 42 at 1-2.)

On March 15, 2021, McNutt, who is still in state custody, filed a *pro se* motion for final disposition and adjudication of his violation of supervised release. (Doc. 38.) McNutt asserts that the outstanding federal warrant and detainer prevent him from being reclassified to a minimum custody unit, impeding his ability to participate in work and drug and alcohol addiction programs. (Doc. 39 ¶¶ 8-9.) He also asserts that his earliest potential date of release from state prison is December 30, 2023, so unless his motion is granted, he will have to wait until then to be transferred to federal custody. (Doc. 38 at 3.) Accordingly, he asks the Court to conduct a hearing and adjudicate the outstanding supervised release violation matter. (*Id.*) He also requests that the hearing be conducted "as soon as possible." (Doc. 40.)

On March 29, 2021, the government responded to McNutt's motions. (Doc. 42.)

The government argues that "[a] defendant on federal supervised release who is incarcerated on state charges does not have the right to accelerate the adjudication of his federal supervised release violation." (*Id.* at 2.) The government points out that, under the Sentencing Guidelines, when a term of imprisonment is imposed for a supervised release violation, the sentence should run consecutively to the sentence the defendant is currently serving. (*Id.* at 3.) Although the Guidelines are not binding, the government argues that ignoring them "would be an abuse of discretion." (*Id.*) The government states that it will seek consecutive imprisonment in McNutt's case and will ask for supervised release to follow. (*Id.*) Thus, the government contends that McNutt's motions should be denied. (*Id.*)

McNutt replies that the Court "may show mercy for rehabilitative purposes" while conceding that it "has no duty to do so." (Doc. 43 at 2.) Thus, McNutt does not contest that the government's response is legally correct, but "asks that the Court exercise its power to bring him into federal custody." (*Id.*)

## DISCUSSION

"[T]he federal government is not constitutionally required to writ a defendant out of state custody and into federal custody for purposes of executing a [supervised release] violation warrant." *United States v. Garrett*, 253 F.3d 443, 448 (9th Cir. 2001). Nor is "the federal government . . . statutorily required to writ a defendant out of state custody and bring him before the federal district court for his revocation hearing." *Id.* at 449. Put simply, "[t]here is no constitutional right to disposition of supervised release violation charges prior to the expiration of a separate sentence." *Lester v. United States*, 2013 WL 4083628, *1 (D. Ariz. 2013). The Court sympathizes with McNutt's desire to resolve the federal detainer against him as soon as possible and appreciates his interest in self-betterment and rehabilitation, but "the unusual step of a transfer" is unwarranted under the facts of this case because transfer would be premature and burdensome. *United States v. Littlefield*, 2013 WL 5937448, *2 (C.D. Cal. 2013).

First, adjudication now would be premature. Especially in a case like this, where

the government plans to seek a consecutive sentence, it is generally premature to determine the proper disposition of an alleged supervised release violation while a defendant is still serving his state sentence. Only after the conclusion of the state sentence will the Court have the benefit of a full record to determine whether additional time in federal custody should be imposed. *Cf. Littlefield*, 2013 WL 5937448 at *2-3 (reasoning that "the court could take time already served into account when determining the parole violation sentence" and would consider "the extent to which an inmate has availed himself of rehabilitative programming and the extent of such programming available . . . . following Petitioner's completion of his [state] sentence"); *United States v. Daniel*, 2009 WL 1953395, *4 (S.D. Cal. 2009) ("In the ordinary course, a defendant is detained by state authorities, the criminal complaint is adjudicated, and then after the completion of the state sentence the defendant is transferred to federal custody. This process allows for informed decision making as there is a record upon which the district court may base its decision to revoke or modify supervised release.").

Second, adjudication now would also be burdensome. Although McNutt is housed within this District, transferring him from state to federal custody and back would create burdens for both state and federal officers. Such burdens would be enhanced in light of the ongoing COVID-19 pandemic. *Cf. United States v. Valero*, 2020 WL 3971856, *2 (D. Ariz. 2020) ("[The Court] will not burden the federal courts with Valero's transfer when, as demonstrated below, a request for concurrent sentencing is inconsistent with the Guidelines."); *Littlefield*, 2013 WL 5937448 at *2 ("[W]ere the court to order a transfer out of the state facility to a federal facility in this district, Petitioner would very likely be transferred back to state custody promptly after the revocation hearing, resulting in a substantial burden on both state and federal corrections personnel. This burden is not justified . . . . by Petitioner's desire to access greater rehabilitative and job training programs at federal facilities, a desire shared by a great number, if not the majority, of inmates in state facilities.").

…

Accordingly,

**IT IS ORDERED** that McNutt's motion for final disposition and adjudication (Doc. 38) and motion to expedite hearing (Doc. 40) are **denied**.

Dated this 23rd day of April, 2021.

Dominic W. Lanza
United States District Judge